NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS DILONE, | Civil Action No. 13-3895 (WJM) |
| Petitioner, | |
| v. | OPINION |
| OSCAR AVILES, | |
| Respondent. | |

**APPEARANCES**:

PERHAM MAKABI, Esq.
125-10 Queens Blvd., Suite 6
Kew Gardens, NY 11415
Attorney for Petitioner

JORDAN MILOWE ANGER, Assistant United States Attorney
UNITED STATES ATTORNEY
970 Broad Street
Newark, NJ 07102
Attorneys for Respondent

**MARTINI, District Judge**:

Luis Dilone, confined at Hudson County Correctional Facility in New Jersey, filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, challenging his pre-removal-period mandatory detention since May 25, 2012, pursuant to 8 U.S.C. § 1226(c), in the custody of the Department of Homeland Security ("DHS"). *See Diop v. ICE,* 656 F.3d 221 (3d Cir. 2011). Respondent filed an Answer, Petitioner filed a Reply and, pursuant to this Court's Order, on November 12, 2013, Petitioner's attorney informed this Court that the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of the May 28, 2013, order of removal. Since Petitioner's order of removal became administratively final when the BIA

dismissed his appeal, he is no longer being detained pursuant to 8 U.S.C. § 1226(c). However, because his detention will again be governed by § 1226(c) if he files a petition for review in the Second Circuit and that court grants a stay, this Court will not dismiss the Petition as moot, but will stay the matter and administratively terminate the case, subject to reopening in the event that Mr. Dilone files a petition for review and obtains a stay of his removal.

## I. BACKGROUND

Mr. Dilone, a native and citizen of the Dominican Republic, entered the United States in 1992 as a lawful permanent resident. On August 22, 2003, he pled guilty to drug charges in the United States District Court for the Southern District of New York, and on August 21, 2003, Judge Richard Owen sentenced him to a 20-month term of imprisonment. On May 25, 2012, DHS arrested Mr. Dilone and served him with a notice to appear for removal based on his 2003 conviction. On May 28, 2013, the Immigration Judge ordered Mr. Dilone's removal. Mr. Dilone appealed, and on or about November 12, 2013, the BIA dismissed the appeal.

Mr. Dilone filed the instant § 2241 Petition on June 25, 2013, while his appeal was pending before the BIA.[1] He claims in the Petition that his pre-removal-period detention, pursuant to 8 U.S.C. 1226(c), since May 25, 2012, has become unreasonably prolonged within the meaning of *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011), and *Leslie v. Attorney General*, 678 F.3d 265 (3d Cir. 2012). He seeks a writ of habeas corpus releasing him from detention. In the

---

[1] Mr. Dilone had filed a § 2241 petition in 2012, whereby he challenged his pre-removal-period detention pursuant to 8 U.S.C. § 1226(c) on the ground that he was not subject to mandatory pre-removal-period detention because DHS did not take him into custody immediately upon his release from criminal incarceration. *See Dilone v. Shanahan,* Civ. No. 12-7894 (MAS) (D.N.J. filed Dec. 28, 2012). Judge Shipp dismissed that petition on the basis of the Third Circuit's decision in *Sylvain v. Attorney General of U.S.,* 714 F.3d 150 (3d Cir. 2013). *See Dilone,* 2013 WL 5604345 (D.N.J. Oct. 11, 2013).

2

Answer, DHS argues that this Court should dismiss the Petition because Mr. Dilone's detention has not been unreasonably long and, in any event, his continued detention is necessary to fulfill the purposes of § 1226(c).

On September 23, 2013, this Court ordered Mr. Dilone to notify this Court, within five days, of the issuance of a decision by the BIA on his appeal from the order of removal. On November 12, 2013, Mr. Dilone's attorney informed this Court that the BIA dismissed his appeal.

## II. DISCUSSION

A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of the DHS at the time he filed his Petition, *see Spencer v. Kemna*, 523 U.S. 1, 7 (1998), and he asserts that his detention violates federal law and his constitutional rights. *See Bonhometre v. Gonzales*, 414 F.3d 442, 445-46 (3d Cir. 2005).

B. Mootness

The exercise of judicial power depends upon the existence of a case or controversy because Article III of the Constitution limits the judicial power of federal courts to "cases or controversies" between parties. U.S. Const. art. III, § 2. "This "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have 'a personal stake in the outcome' of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990). "This means that, throughout the

litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (citation and internal quotation marks omitted).

In this case, Mr. Dilone contends that he is entitled to release under *Diop* because his pre-removal-period detention, pursuant to 8 U.S.C. § 1226(c), since May 25, 2012, has become unreasonably prolonged. However, the statutory authority to detain an alien depends on where the alien is in the removal process. Section 1226 governs the pre-removal-period detention of an alien. Generally, pursuant to Section 1226, the Attorney General has the authority to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States. Section 1226 also sets certain parameters for pre-removal-period detention, including when detention is mandatory (such as in the case of criminal aliens) and when a bond hearing must be held. Once the removal period begins, detention is governed by 28 U.S.C. § 1231(a)(2), which requires the detention of the alien during a 90-day removal period.[2] This 90-day removal period, which can be a shifting target, begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

---

[2] Section 1231(a)(1)(A) provides, in relevant part: "[W]hen an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Section 1231(a)(2) provides: "During the removal period, the Attorney General shall detain the alien."

With respect to § 1231(a)(1)(B)(i), an order of removal becomes "final upon the earlier of – (i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B); *see also* 8 C.F.R. § 1241.1(a).

In this case, Mr. Dilone's order of removal became final when the BIA dismissed his appeal and upheld the removal on or about November 12, 2013. *See* 8 U.S.C. § 1101(a)(47)(B)(i). On that date, his 90-day removal period began, *see* 8 U.S.C. § 1231(a)(1)(B)(i), and his detention became authorized – and required – by § 1231(a)(2). *See Ufele v. Holder,* 473 F.App'x 144, 145 (3d Cir. 2012) ("[U]pon the issuance of a final order of removal, the authority for Ufele's detention switched from 8 U.S.C. § 1226 to 8 U.S.C. § 1331."); *De La Teja v. United States,* 321 F.3d 1357, 1363 (11th Cir. 2003) ("Because a final removal order has been entered, De La Teja is no longer being detained pursuant to § 1226(c), which governs *only* detention prior to a final removal order. Instead, he is being detained now pursuant to a wholly different statute . . , 8 U.S.C. § 1231(a), which controls the detention and removal of an alien subject to a final order of removal.") (emphasis in original).

Since Mr. Dilone's detention is no longer governed by § 1226(c), his legal challenge under *Diop* to such detention may no longer present a case or controversy and the challenge may be moot. *See Ufele,* 473 F.App'x at 146 ("[I]nsofar as Ufele challenges the lawfulness of his detention pursuant to § 1226(c) and he is no longer in custody pursuant to this statute, his [habeas] appeal is moot and must be dismissed for lack of jurisdiction."); *De La Teja,* 321 F.3d at 1363 ("Because the Attorney General no longer is acting pursuant to § 1226(c), it is unnecessary and altogether inappropriate for us to take up the question addressed by the district court – whether De

5

La Teja's detention pursuant to that provision violates the Due Process Clause . . . . Any opinion on the matter would be purely advisory in nature, and therefore the issue has become moot."). Although Mr. Dilone's detention is not at this time governed by § 1226(c), his challenge to the legality of that detention may avoid mootness, however, if his detention under that statute is capable of repetition while evading review. This exception applies where "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Turner v. Rogers,* 564 U.S. __, __, 131 S.Ct. 2507, 2515 (2011) (citation and internal quotation marks omitted); *see also Diop,* 656 F.3d at 227.

In this case, it is conceivable that Mr. Dilone will file a petition for review in the Second Circuit and that the Second Circuit will stay his removal pending the outcome of the petition for review. If these contingencies were to occur, then Mr. Dilone's detention would once again be governed by § 1226(c) because, according to the shifting target created by § 1231(a)(1)(B)(ii), the removal period would not begin until the later date of the Second's Circuit's final order. *See* 8 U.S.C. § 1231(a)(1)(B)(ii) ("The removal period begins on the latest of the following . . . (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.") Although it is not clear that these contingencies constitute a "reasonable expectation that the same complaining party will be subject to the same action again," *Spencer*, 523 U.S. at 17,[3] this Court will retain jurisdiction, but will stay the § 2241 proceeding,

---

[3] *Spencer* emphasizes that a court should address the issue of mootness in terms of the "likelihood" that a favorable decision would redress the alleged injury or wrong and prohibits reliance on speculative collateral consequences which are no more than "a possibility rather than a certainty or even a probability," *Spencer*, 523 U.S. at 14-16.

subject to reopening in the event that Mr. Dilone notifies the Court that he has filed a timely petition for review and the Second Circuit has stayed his removal.

### III.   CONCLUSION

For the foregoing reasons, this Court will stay the Petition and administratively terminate the case.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

DATED: November 21, 2013